FILED

2016 Mar-28  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA


# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

WHITNEY BATES,         )
                        )
      Plaintiff       )
                        )
v.                    )   CASE NO. 2:14-CV-1877-KOB
                        )
ADVANCED CORRECTIONAL,  )
HEALTHCARE, et al.,      )
                        )
      Defendants.   )

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PLAINTIFF'S RESPONSE TO STATEMENTS OF FACT . . . . . . . . . . . . 2

       A.     ACH Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.     Sheriff Hale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   PLAINTIFF'S ADDITIONAL FACTS IN THE LIGHT MOST FAVORABLE
       TO HER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     The Jefferson County Jail Has a Policy Prohibiting or at Least Severely
              Disfavoring Narcotic Pain Medications, and a Reasonable Jury Can
              Conclude Cooper Green Personnel Were Aware of and Deferred to this
              Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.     Bates Suffered a Severe Fracture, but, Instead of Treating the Pain it
              Caused, Defendants Isolated Her So There Would Be No Witnesses to
              Her Suffering. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.     A District Court Is Not Permitted to Discount a Plaintiff's Version of
              Events, as Defendants Ask this Court to Do, in the Absence of an
              Accurate Video That Clearly and Completely Contradicts the Plaintiff
              or the Equivalent of Such Evidence, Both of Which Are Lacking Here.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.     Disputed Issues of Material Fact Preclude Summary Judgment on
              Bates's Deliberate Indifference to Serious Medical Needs Claim. . 16

       C.     There Is No Requirement That the Actor Who Committed the
              Underlying Constitutional Violation Be a Party to the Litigation. . 21

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WHITNEY BATES, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-1877-KOB |
| | ) | |
| ADVANCED CORRECTIONAL, | ) | |
| HEALTHCARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendants' motions are due to be denied.  Sheriff Hale and the ACH defendants do not take the facts in the light most favorable to Bates. In that light, Bates suffered a severe fracture of multiple bones in her left wrist (an injury expected to cause severe pain), yet was only prescribed ibuprofen, an over-the-counter medication common sense and experience say would not be effective and which, a reasonable jury can conclude, medical personnel knew would be ineffective.  Instead of treating Bates' severe pain, defendants isolated plaintiff so that there would be no witnesses to her suffering.  The denial of effective pain medication was pursuant to a jail policy that prohibited the use of narcotic pain medication or so limited its use

1

that it was only given in the most extreme situations (i.e., cancer and multiple gunshot wounds).  As for Sheriff Hale's claim that he cannot be liable because only ACH and policymaker defendants remain, he misunderstands the law.  There is no requirement that the person committing the constitutional violation be a party to the litigation.

Plaintiff does not oppose the dismissal of her medical malpractice claim.

## II.    PLAINTIFF'S RESPONSE TO STATEMENTS OF FACT[1]

### A.    ACH Defendants

1.-4.  Admitted.

5.      Disputed. Plaintiff testified she saw the doctor write a prescription and give it to the corrections officer with her. [Bates Dep. (Hale Ex. 6) at 124-25] Also, even ignoring plaintiff's testimony, disputed to the extent defendant seeks an inference that a medical decision was made by Cooper Green physicians that Bates did not need narcotic pain medication.  Any failure by Cooper Green physicians to prescribe a narcotic for pain shows medication decisions were considered a jail matter, as it is not disputed that plaintiff's injury would need treatment for pain after she left the hospital.  In the light most favorable to plaintiff, there was a no-narcotic policy at the jail, the policy had been in place for many years, Cooper Green had been

---

[1] To the extent facts are admitted, they are admitted for summary judgment purposes only.

the jail hospital for many years, and hospital physicians did not bother to write a prescription jail personnel would not fill.  In any event, because there was no prescription from Cooper Green, it was the jail's responsibility to treat plaintiff's pain. *See* Pl. Fact ¶¶1-5.

6.     Admitted.

7.     Disputed. Jail records do say Dr. Hicks gave a verbal order for 800 mg ibuprofen twice per day, [Jail Records (Hale Ex. 1) at JCS0037], but Dr. Hicks, who says he signs off on orders he gives, never signed off on this order, [Hicks Dep. (Hale Ex. 10) at 19-20].

8.     Admitted that no complaints of pain were documented but disputed that plaintiff was not in severe pain.  *See* Pl. Fact ¶¶6-16.

9.     Admitted.

10.    Admitted.

11.    Disputed that plaintiff was not in severe pain.  *See* Pl. Fact ¶¶6-16.

12.    Disputed that plaintiff received ibuprofen more than a couple of times. [Bates Dep (Hale Ex. 6) at 130]

14.    Admitted.

15.    Admitted that the records so state but immaterial as they are for dates after Bates left the Jefferson County Jail.  Moreover, disputed to the extent suggested

3

that Bates did not report or experience significant pain while in the Cullman County

Jail. [Bates Dec. (Pl. Ex. 1) at ¶5]

16.-18. Admitted.

19.-21. Disputed. *See* Pl. Fact ¶¶1-5.

**B.     Sheriff Hale**

1.-15. Admitted.

16.     Disputed. Plaintiff testified she saw the doctor write a prescription and

give it to the corrections officer with her. [Bates Dep. (Hale Ex. 6) at 124-25] Also,

even ignoring plaintiff's testimony, disputed to the extent defendant seeks an

inference that a medical decision was made by Cooper Green physicians that Bates

did not need narcotic pain medication.  Any failure by Cooper Green physicians to

prescribe a narcotic for pain shows medication decisions were considered a jail

matter, as it is not disputed that plaintiff's injury would need treatment for pain after

she left the hospital.  In the light most favorable to plaintiff, there was a no-narcotic

policy at the jail, the policy had been in place for many years, Cooper Green had been

the jail hospital for many years, and hospital physicians did not bother to write a

prescription jail personnel would not fill.  In any event, because there was no

prescription from Cooper Green, it was the jail's responsibility to treat plaintiff's

pain. *See* Pl. Fact ¶¶1-5.

17.     Admitted.

18.     Disputed that Bates was isolated because the women's cells were overcrowded.  The women's cells were not full, and plaintiff was not told she was being isolated for that reason. [Bates Dec. (Pl. Ex. 1) ¶3; Bates Dep.(Hale Ex. 6) at 179-80] Also, the records make no mention of any such overcrowding, and, in fact, state plaintiff is being released to population.  [Jail Records (Hale Ex. 1) at 0040]  Dr. Hicks knows of no reason Bates should have been isolated. [Hicks Dep. (Hale Ex. 10) at 73-74]

20.-24. Disputed that Bates did not report or experience severe pain.  *See* Pl. Fact ¶¶6-16.

25.     Admitted that the records so state but immaterial as they are for dates after Bates left the Jefferson County Jail.  Moreover, disputed to the extent suggested that Bates did not report or experience significant pain while in the Cullman County Jail. [Bates Dec. (Pl. Ex. 1) at ¶5]

26.-42.Admitted.

5

## III.   PLAINTIFF'S ADDITIONAL FACTS IN THE LIGHT MOST FAVORABLE TO HER

### A.   The Jefferson County Jail Has a Policy Prohibiting or at Least Severely Disfavoring Narcotic Pain Medications, and a Reasonable Jury Can Conclude Cooper Green Personnel Were Aware of and Deferred to this Policy.

1.     According to two long-time detention officers, the Jefferson County Jail has always been considered a no-narcotic facility. [Agee Dep. (Pl. Ex. 2) at 7, 26-29, 32, 34; Cornelius Dep. (Pl. Ex. 2) at 18-19, 35-36] These detention officers have heard nurses, including one of the LPNs who treated plaintiff (nurse Eatmon), and detention officers, including supervisors, make statements to this effect.  [Agee Dep. (Pl. Ex. 2) at 7, 26-29, 32, 34; Cornelius Dep. (Pl. Ex. 3) at 18-19, 35-36]

2.     ACH keeps no narcotics on hand at the jail; any pain medications beyond over-the-counter NSAIDs must be specially ordered. [Fowler Dep. (Hale Ex. 11) at 58-62]

3.     The primary person seeing inmates with medical problems was a nurse practitioner, Mary Moore, who is at the jail 3 days a week. [Moore Dep. (Hale Ex. 9) at 12]  There is also a physician, David Hicks, M.D., but he only sees inmates 2 hours per week, though he is available by phone. [Hicks Dep. (Hale Ex. 10) at 11] As a nurse practitioner, Moore cannot prescribe narcotics.  [Moore Dep. (Hale Ex. 9) at 10] Moore says she has the option of referring inmates to Dr. Hicks, that she refers more

6

complicated matters to him, and that she has contacted Dr. Hicks about the necessity of narcotic pain medication for inmates. [Moore Dep. (Hale Ex. 9) at 13] Over a four-year period (2012-2015), however, Moore can only recall a single instance in which she referred an inmate to Dr. Hicks for a pain issue, a recent case involving an inmate with a broken leg with an external fixator. [Moore Dep. (Hale Ex. 9) at 14-16] While Hicks says he has prescribed narcotic medications in extreme situations, like multiple gunshot wounds, cancer, multiple broken bones, and chronic pain, [Hicks Dep. (Hale Ex. 10) at 82-83], because plaintiff has not yet been permitted full discovery on the issue, the true extent of the use of narcotic pain medication at the Jefferson County Jail is not known.

4.     Cooper Green has been the hospital to which Jefferson County inmates were brought for many years before plaintiff was brought there. [Cornelius Dep. (Pl. Ex. 3) at 20-21] Cooper Green does not ordinarily send prescriptions back to the jail. [Cornelius Dep. (Pl. Ex. 3) at 20-21] In any event, the jail physician, Dr. Hicks, is responsible for all medication decisions at the jail; is not bound by any prescription by an outside physician, including Cooper Green physicians; and always makes an independent determination regarding the medications inmates will receive. [Fowler Dep. (Hale Ex. 11) at 40-41]

5.     While diligently avoiding directly answering the questions being asked

7

by the undersigned, Dr. Hicks all but conceded that doctors commonly treat injuries like the one Ms. Bates had with narcotic pain medication, acknowledges that he himself has prescribed narcotic pain relievers for such injuries, and, in any event, says a person initially prescribed a NSAID should be prescribed a more potent pain medication such as a narcotic if the NSAID is not effective. [Hicks Dep. (Hale Ex. 10) at 84-89, 103-06, 115-16, 126-28, 130-33, 134-36, 138-40, 146-47, 150-51, 152-53, 155-56, 159-61, 165, 166, 168-69, 171-73]

**B.     Bates Suffered a Severe Fracture, but, Instead of Treating the Pain it Caused, Defendants Isolated Her So There Would Be No Witnesses to Her Suffering.**

6.     The x-ray report describes plaintiff's injury as follows:

> Severely comminuted partially impacted distal radial fracture with palmar displacement of the tip of the proximal fragment almost the widthe of the bone. Articular cartilage appears to be violated. Comminuted displaced ulnar styloid fracture as well. Marked soft tissue swelling.

[Cooper Green records (Hale Ex. 7) at 040]   Though a manual closed reduction procedure was performed at the hospital, [Jail Records (Hale Ex. 1) at JCS0019], the severity of plaintiff's injury required further surgery in the form of an open reduction with internal fixation, which was eventually performed in Cullman, [Hirsbrunner Records (Hale Ex. 5) at 010)].   The purpose of the surgery was "to alleviate joint pain, to alleviate skeletal pain, to alleviate muscle pain, to alleviate joint stiffness, and

8

to recover limb function." [Hirsbrunner Records (Hale Ex. 5) at 004)]  Dr. Hicks concedes Bates suffered a severe fracture. [Hicks Dep. (Hale Ex. 10) at 159-60]

7.     The manual closed reduction procedure itself was an extremely painful procedure in which the doctor used a large amount of force to get the bone pieces in plaintiff's wrist aligned.  [Bates Dep. (Hale Ex. 6) at 118-19]  The manual reduction procedure would not be expected to eliminate plaintiff's pain, which would increase after the IV pain medication wore off. [Hicks Dep. (Hale Ex. 10) at 33-36, 59, 63] Nevertheless, plaintiff, at least according to the Cooper Green records, was discharged without any prescription, making treatment of plaintiff's pain the responsibility of ACH. [Hicks Dep. (Hale Ex. 10) at 61-53]

8.     Of course, given Cooper Green's long history of treating jail inmates and the jail's no-narcotics policy, a reasonable inference is that Cooper Green did not provide Bates with a prescription for a narcotic pain reliever because of the jail's policy.

9.     According to the Cooper Green records, plaintiff rated her pain as a 10/10 prior to being given intravenous narcotic pain medication. [Cooper Green records (Hale Ex. 7) at 025, 030] Plaintiff was given Dilaudid, a potent opiod pain medication. [Cooper Green records (Hale Ex. 7) at 036]  Thus, at 2:05 a.m., after plaintiff was back at the jail, her pain was in control. [Jail Records (Hale Ex.1) at

9

JCS0040; Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 178]

10.     Jail records say that at 2:05 a.m. nurse Eatmon called Dr. Hicks, who gave a verbal order for 800 mg ibuprofen twice per day, [Jail Records (Hale Ex. 1) at JCS0037], but Dr. Hicks, who says he signs off on orders he gives, never signed off on this order, [Hicks Dep. (Hale Ex. 10) at 19-20].

11.     By 5:00 a.m., however, plaintiff's severe pain had returned and was never relieved before she was released 6 days later. [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 178] Plaintiff's pain was excruciating. [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 178]  Plaintiff did not receive anything for pain except for a couple of doses of Tylenol or ibuprofen she received through a slot in her cell door.  [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 130]

12.     Plaintiff was placed in a medical isolation cell upon her return from the hospital even though she begged not to be isolated and even though there was no overcrowding issue in the women's cells to justify the cell change.  [Bates Dec. (Pl. Ex. 1) at ¶3; Bates Dep. (Hale Ex. 6) at 179-80] Dr. Hicks knows of no reason Bates should have been isolated, [Hicks Dep. (Hale Ex. 10) at 73-74], and jail medical records say that plaintiff was released to go back to a regular population cell, [Jail Records (Hale Ex. 1) at 0040].

13.     Because plaintiff was isolated, she had no one to help her with daily

10

activities like pulling her pants down and putting her hair up. [Bates Dec. (Pl. Ex. 1) at ¶3; Bates Dep. (Hale Ex. 6) at 106, 179-80] Plaintiff was not permitted to shower or make a phone call.  [Bates Dec. (Pl. Ex. 1) at ¶3; Bates Dep. (Hale Ex. 6) at 106]

14.    Plaintiff made numerous complaints about her severe pain to corrections officers (via intercom) and to nurses when they gave out medication, all of which were ignored. [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 178-79] As a matter of routine, corrections officers inform medical personnel regarding the complaints of inmates in medical cells. [Agee Dep. (Pl. Ex. 2) at 14; Cornelius Dep. (Pl. Ex. 3) at 25-26; Eddings Dep. (Hale Ex. 8) at 25-26]

15.    Plaintiff was not examined by any medical person at the jail until October 9, when she saw nurse practitioner Moore. [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 129-30, 135-36; Jail Records (Hale Ex. 1) at JCS0034] Plaintiff told Moore about how she had been suffering in severe pain for days.  [Bates Dec. (Pl. Ex. 1) at ¶4; Bates Dep. (Hale Ex. 6) at 175-77, 181-82]  The nurse practitioner note for October 9, however, contains no information about plaintiff's level of pain. [Jail Records (Hale Ex. 1) at JCS0034]

16.    The record for plaintiff's Cooper Green orthopedic visit the next day, October 10, states that plaintiff "is complaining of left wrist pain," that plaintiff rated her pain at 7/10, and that "there is pain with any attempted movement of the fingers

11

or wrist." [Jail Records (Hale Ex. 1) at JCS0015]  Dr. Hicks concedes a 7/10 is "uncontrolled pain." [Hicks Dep. (Hale Ex. 10) at 78]

## IV.   ARGUMENT

### A.   A District Court Is Not Permitted to Discount a Plaintiff's Version of Events, as Defendants Ask this Court to Do, in the Absence of an Accurate Video That Clearly and Completely Contradicts the Plaintiff or the Equivalent of Such Evidence, Both of Which Are Lacking Here.

On summary judgment, a court "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150 (2000).   A court gives credence to the "'evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, **at least to the extent that that evidence comes from disinterested witnesses**.'" *Id.* (citations omitted) (emphasis added); *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir. 2005) (quoting *Reeves*). A court considers the entire record, but "disregard[s] all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 150; *Ledbetter*, 421 F.3d at 1177 (quoting *Reeves*).

It is improper for a "district court to discount or disregard [sworn testimony in the nonmovant's favor] at the summary judgment stage based on its assessment of the

**quality** of the evidence." *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008) (emphasis in original). Thus, a district court errs when it discounts the plaintiff's version of an incident with a police officer because the plaintiff's version is contradicted by other witnesses. *See Galvez v. Bruce*, 552 F.3d 1238, 1243-44 nn.4-5 (11th Cir. 2008). Moreover, a court errs when it does not "consider [a plaintiff's] claim the [the officer's] version of the [incident is] flatly untrue." *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007).

Recently, the Supreme Court, in *Tolan v. Cotton*, 572 U.S. at ___, 134 S. Ct. 1861, 1865 (2014), cautioned courts not to "resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* In *Tolan*, the Supreme Court found lower courts committed several errors in construing the facts. First, the courts credited the officer's testimony to "dimly lit" conditions and ignored directly contradictory testimony from Tolan's father that two floodlights shone on the scene, and Tolan's own testimony that he "was not in darkness." *Id.* at 1866-67. Second, the lower courts credited the officers' testimony that Tolan's mother was "agitated" and "refused orders to remain quiet and calm." *Id.* at 1867. In contrast, Ms. Tolan testified that she was neither agitated nor aggravated when she told the officers that Tolan was her son and the automobile in question belonged to her family. *Id.* Third, the lower courts concluded that Tolan "shouted" and "verbally threatened" the

officers even though Tolan testified that he, without screaming, reacted to the officers' throwing his mother into a garage door, telling them to "get your f#%king hands of my mom." *Id.* The Court found this testimony to raise a genuine disputed material fact, stating, "A jury could well have concluded that a reasonable officer would have heard Tolan's words not as a threat, but as a son's plea not to continue any assault of his mother." *Id.*

Defendant ACH contends its own medical records can be a basis for disregarding plaintiff's testimony. [ACH Brief at 11] The cases cited by defendant, *Whitehead v. Burnside*, 403 Fed. Appx. 401 (11th Cir. 2010), and *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), will not support the weight ACH asks them to bear, as in those cases the inmates opposed summary judgment with bare conclusory allegations that were completely implausible and directly contrary to credible sworn testimony and documents from uninterested parties. *Whitehead* involved the medical records of a local hospital (and an affidavit by a hospital physician), not, as here, the self-serving records of the very medical providers who are alleged to have been deliberately indifferent.  403 Fed. Appx. at 403-04.

Here, additionally, there is ample medical support (and truly little dispute) that plaintiff suffered a severe injury that is expected to cause significant pain that is commonly treated with narcotics. *See McReynolds v. Alabama Dep't of Youth Servs.*,

14

No. 2:04-CV-850-MEF, 2008 WL 1927373, at *3 (M.D. Ala. Apr. 29, 2008) (distinguishing *Bennett*, in which "there was no evidence, other than the prisoner's own conclusory allegations, that he had actually been injured by the defendants," and noting lack of dispute regarding the plaintiff's injury); *Walker v. Maddison*, No. CV605-128, 2007 WL 143014, at *2 (S.D. Ga. Jan. 17, 2007) ("Unlike the situation in *Brown* and *Bennett*, where the inmates had only their own bare allegations of serious injury, the record here reveals that Plaintiff was examined by medical personnel approximately forty-eight hours after the alleged use of force, and then again some five days later.").

Only when a party's account is "inherently incredible" or "utterly discredited" can it be disregarded. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (2013) (in excessive force shooting case, rejecting defendant's argument, based on *Scott v. Harris*, 550 U.S. 372, 378-81, 127 S.Ct. 1769, 1775-76 (2007), that forensic evidence "utterly discredited" the plaintiff's version of events). While "an accurate video recording completely and clearly contradicts a party's testimony" may permit plaintiff's account to be disregarded, defendants "do[] not offer a video recording of the incident . . .." *Morton*, 707 F.3d at 1284; *see also Perez v. Suszczynski*, 809 F.3d 1213, 1221 (2016); *Mathis v. Adams*, 577 Fed. Appx. 966, 968 (11th Cir. 2014); *Skelly v. Okaloosa County Bd. Of County Comm'rs*, 415 Fed. Appx. 153, 154-55

15

(11th Cir. 2011).   Here, the jail medical record, created by an adverse party's employees (pursuant to that party's policy and custom of not prescribing narcotic pain medication) is certainly not the type of evidence that can be equated to an accurate and complete video recording.

**B.     Disputed Issues of Material Fact Preclude Summary Judgment on Bates's Deliberate Indifference to Serious Medical Needs Claim.**

Defendants do not appear to seriously dispute that Bates had an objectively-serious medical need and that is understandable, as Bates had a severe fracture for which she required a second surgery to, among other things, relieve pain, [Hirsbrunner Records (Hale Ex. 5) at 004)], and which is expected to cause significant pain.   Defendants claim that no reasonable jury can find ACH personnel were deliberately indifferent to plaintiff's serious medical need.

The Eleventh Circuit, however, has recognized that failing to adequately treat an inmate's pain can be deliberate indifference:

> A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness. In *Estelle*, the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death'" or, "[i]n less serious cases, . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle*, 429 U.S. at 103, 97 S.Ct. 285 (quoting *In re Kemmler*, 136

16

U.S. 436, 447, 10 S.Ct. 930 (1890)).

Our cases, too, have recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain. In *Brown v. Hughes*, 894 F.2d 1533 (11th Cir.1990), we recognized that the delay of a few hours in treating an inmate's broken foot could constitute a violation of the Eighth Amendment, holding that the failure to treat the pain from a broken foot, even for a few hours, was a constitutionally cognizable injury. "With this type of injury, it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves. Deliberately inflicted pain, as with an electric cattle prod, does not become unimportant and unactionable under the eighth amendment simply because the pain produced is only momentary." *Id.* at 1538; *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (reversing grant of summary judgment to prison officials on inmate's claim that delay in providing treatments that "eliminated pain and suffering at least temporarily" constituted deliberate indifference); *Aldridge v. Montgomery*, 753 F.2d 970, 972-73 (11th Cir. 1985) (reversing directed verdict to officers who failed to provide ice pack and aspirin for pain caused by bleeding cut); *see also Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (reversing grant of summary judgment to prison guard who failed to provide pain medication to inmate); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (recognizing that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering.").

*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).

In *McElligott*, the Eleventh Circuit reversed a grant of summary judgment to defendants on plaintiff's deliberate indifference claim where the medications that defendants provided plaintiff, including Tylenol, did not alleviate plaintiff's severe pain, and defendants knowingly chose a less efficacious treatment. *Id.* at 1257-58. The court rejected defendants' attempt to characterize the case as one about a mere

disagreement about treatment. *Id.* at 1259. Rather, "the treatment provided was grossly inadequate, amounting to no treatment at all." *Id.*; *see also Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir.1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."); *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) ("Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If 'deliberate indifference caused an easier and less efficacious' treatment to be provided, the defendants have violated the plaintiff's Eighth Amendment rights.").

Taking the facts in the light most favorable to plaintiff, ACH personnel intentionally chose a less efficacious treatment (and then did not even give plaintiff the medication except for a couple of times). Plaintiff had a severe fracture involving multiple bones that needed surgical repair to relieve pain and restore function. Common sense and common human experience say the pain from such an injury cannot be adequately treated with an over-the-counter medication like ibuprofen, even at prescription strength. This common sense and experience is supported not only by plaintiff's testimony but also by the medical records showing plaintiff was given IV narcotics at the hospital, by plaintiff's 7/10 pain rating three days after she was released, and by a fair reading of the testimony of Dr. Hicks, who, while mostly trying to avoid the truth of common sense and experience, grudgingly conceded that

18

plaintiff's injury is expected to cause significant pain and that such pain is commonly treated with narcotics.

Narcotics were effective in reducing plaintiff's pain in the hospital, and there is every reason to believe they would have been effective at the jail. Plaintiff testified she received a prescription for a narcotic at the emergency room, testimony that must be accepted on summary judgment motion. Even if plaintiff's testimony could be disregarded, the jail physician's grudging concession (1) that narcotics are commonly prescribed for such injuries and (2) that narcotics should be prescribed if NSAIDs are not effective, are alone sufficient.

Because Bates is not claiming any detrimental effect beyond unnecessary pain and suffering, she is not required to provide verifying medical testimony. *See Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1984); *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 68 (3d Cir. 1994). In any event, Hicks' testimony would satisfy any such requirement.

Moreover, a reasonable jury can conclude that plaintiff was given ibuprofen not because of a medical judgment that she did not need a narcotic but instead pursuant to a policy at the jail at least strongly disfavoring the use of narcotics (such that they are only used in the most extreme cases). It is well established that officials who

19

intentionally deny medical treatment for a non-medical reason are deliberately indifferent to an inmate's serious medical needs, and summary judgment should be denied on this basis alone. *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (delaying medical treatment for non-medical reason constitutes deliberate indifference); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (same); *see also Scott v. Campbell*, No. 4:08cv205-RH/WCS, 2009 WL 3028306, *2 (N.D. Ala. Sept. 17, 2009) ("Mr. Scott asserts that the failure to treat his pain was based on a policy forbidding the use of narcotic pain medications at the jail. The record would support a finding that there was a policy disfavoring-if not forbidding-the use of narcotic pain medications, and that the policy was applied despite Mr. Scott's serious medical needs. The record would support a finding that the policy was the moving force behind the failure to adequately treat-that is, behind the deliberate indifference to-Mr. Scott's chronic pain. If so, the Sheriff can be held liable.") (citation omitted).

Importantly, this is not a case about a plaintiff's subjective complaints unsupported by objective evidence or a sincere effort to treat plaintiff's pain that did not succeed. Rather, this is a case in which, a reasonable jury can conclude, plaintiff was denied narcotic pain medication despite her obvious need for it (pursuant to a jail policy against such medications) and then isolated so that there would not be inmate

20

witnesses to her suffering and so she could not seek the help of such inmates or call friends or family for help.

Therefore, the cases relied upon by defendant are easily distinguishable. *See Baez v. Falor*, No. 09-1149, 2012 WL 4356768, *36-*37 (W.D. Pa. Sept. 24, 2012) (many different medications, including narcotics, attempted; plaintiff not entitled to narcotic pain medication of choice, oxycodone); *Rudolph v. Barker*, No. 12-CV-263-WS-M, 2013 WL 1084291, *10 (S.D. Ala. Jan. 29, 2013) (all objective tests, including x-rays and MRI, normal), recommendation adopted, 2013 WL 1080446 (March 14, 2013) (subjective complaints unsupported by objective medical evidence); *Harvey v. Andem*, No. 3:09cv402/WS/CJK, 2011 WL 2532681, *16 (N.D. Fla. May 19, 2011 (same).

### C. There Is No Requirement That the Actor Who Committed the Underlying Constitutional Violation Be a Party to the Litigation.

Supervisory liability arises when there is a causal connection between the actions of a supervising official and the constitutional violation. *Cottone v. Jenne*, 326 F.2d 1352, 1360 (11th Cir. 2003). The causal link can be established by proof of (1) a failure to respond to a widespread pattern of abuse; (2) a custom or policy implemented by the official that resulted in deliberate indifference; or (3) the supervisor directed his subordinates to act unlawfully or knew the subordinates would

21

act unlawfully but failed to stop them.  *Id.*  There is simply no requirement that the individual actor who committed the constitutional violation be a party.  There is only a requirement that there be an underlying constitutional violation, and the cases cited by Sheriff Hale say nothing more than this.  Thus, the dismissal of the person committing the constitutional violation based on qualified immunity does not end the case.  *See, e.g.*, *International Ground Transp. v. Mayor and City Council of Ocean City, Maryland*, 475 F.3d 214, 220 (4th Cir. 2007); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879, 2000 FED. App. 0074P (6th Cir. 2000); *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1317-18 (10th Cir. 1998); *see also Brummett v. Camble*, 946 F.2d 1178 (5th Cir. 1991) (reversing dismissal of county defendant based on argument that plaintiff's claims were barred because county prosecutors, whose actions formed basis of suit, had absolute immunity).

## V.    CONCLUSION

Accordingly, the Court should deny defendants' motions for summary judgment except in regard to plaintiff's medical malpractice claim.

Respectfully submitted,


 s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.


s/ Henry F. (Hank) Sherrod III

23