FILED

2016 Sep-27  PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WHITNEY BATES,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **2:14-CV-1877- KOB** |
| **JEFFERSON COUNTY, ALA et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

Plaintiff Whitney Bates sued numerous Defendants under 42 U.S.C. § 1983, the Americans with Disabilities Act, and state law for medical malpractice arising from medical care she received for a broken wrist while incarcerated in the Jefferson County jail. This matter comes before the court on "Defendant Mike Hale's Motion for Summary Judgment," (Doc. 82); "Defendants Advanced Correctional Healthcare, Inc., Norman Johnson, M.D., and Karen Fowler's Motion for Summary Judgment" (Doc. 84); and Defendants's "Motion to Strike Declaration of Whitney Bates." (Doc. 96).

As a preliminary matter, the court notes that Defendants Sheriff Mike Hale; Advanced Correctional Healthcare; Norman Johnson, CEO of ACH; and Karen Fowler, ACH's administrator at the Jefferson County Jail, are the only remaining Defendants in this case. Additionally, the court has stayed discovery on Ms. Bates's claims related to jail policies pending a determination of whether she has presented a genuine issue of material fact regarding her alleged constitutional violation. Therefore, summary judgment is limited to the issue of whether

1

Ms. Bates was subjected to an underlying constitutional violation. *See* (Doc. 76).

For the reasons discussed below, the court **DENIES** the Defendants's Motion to Strike. Because Ms. Bates does not oppose summary judgment on her medical malpractice claim contained in count two of her complaint, the court **GRANTS** the Defendants' motion for summary judgment as to count two. However, the court **DENIES** Defendants' motion for summary judgment as to count one to the extent the claim is based on the failure of Jefferson County jail officials and contractors to properly administer the non-narcotic pain medication prescribed to Ms. Bates.

**I.      Motion to Strike Portions of Bates's Affidavit**

The Defendants ask the court to strike two portions of Ms. Bates's affidavit because they differ from her deposition testimony. (Doc. 96). First, Defendants assert that Ms. Bates's affidavit states that she complained to the nurses about her lack of pain medication, but Ms. Bates's deposition testimony was that she never was able to get the nurses' attention. Second, Ms. Bates states in her affidavit that she discussed with Nurse Practitioner Moore that she had received a prescription for Lortab, but in her deposition Ms. Bates states that she "assumed" she would be receiving Lortab when Nurse Practitioner Moore said that she would start getting something for pain.

The court has discretion to make an evidentiary ruling as to whether to grant a motion to strike. *See United States v. Stout*, 667 F.2d 1347, 1353 (11th Cir. 1982) ("A trial court's ruling as to the materiality, relevancy or competency of testimony or exhibits will ordinarily not warrant reversal unless constituting an abuse of discretion." (internal citations omitted)). A court may strike a statement in an affidavit when "a party has given *clear answers* to *unambiguous*

2

*questions* which negate the existence of any genuine issue of material fact" and then later provides "sham" new testimony "that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (emphasis added).

However, this doctrine should be used "sparingly because of the harsh effect it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir.1987)). Mere discrepancies are not sufficient to warrant striking; rather the statements must be "inherently inconsistent." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986)*.* Thus, the court must make "[a] definite distinction . . . between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953.

Ms. Bates's statements are not unambiguously contradictory or inherently inconsistent. Ms. Bates's deposition testimony and her affidavit can be construed consistently. In both statements, Ms. Bates testified that she tried to complain to the nurses administering her medication. The statements are both ambiguous regarding whether she was successful in obtaining the nurses' attention. Ms. Bates did not contradict a clear, unambiguous answer to clear, unambiguous questions from her deposition. Therefore, the court declines to strike the testimony in Ms. Bates's affidavit.

Ms. Bates's testimony regarding her conversation with Moore about her medication does not warrant striking either. While a discrepancy may arise between the particularity of the affidavit and her deposition testimony recalling the conversation, the difference between the two statements is not substantial enough to rise to the level of a sham designed to manufacture a

genuine issue of material fact.

This ruling, of course, does not preclude the Defendants from cross-examining Bates about these matters at trial. Therefore, the court **DENIES** the Defendants's Motion to Strike. (Doc. 96).

## II.     Motion for Summary Judgment

### A.     Standard of Review

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### B.    Statement of Facts

These are the facts as viewed in the light most favorable to the non-movant, Ms. Bates; they may not be the facts proven at trial.

The Plaintiff, Whitney Bates, was incarcerated as a pre-trial detainee in the Jefferson County jail from September 2, 2012 until October 12, 2012. On October 5, 2012, while standing with one foot on a toilet and the other on a sink to hang clothes to dry near a vent in her cell, Ms. Bates fell and broke her wrist.

After the fall, Ms. Bates's cell-mates alerted guards to her injury and she was taken to the

jail's medical clinic. An ACH nurse examined Ms. Bates, believed that Ms. Bates had fractured

her left wrist, and decided to transfer her to Cooper Green Hospital's emergency room for

evaluation and treatment. Jail staff transferred Ms. Bates to the hospital within thirty to forty-five

minutes of her injury.

At the emergency room, an orthopedic doctor examined Ms. Bates, diagnosed her with a

left distal radius fracture, and performed a closed reduction. While in the emergency room, Ms.

Bates rated her pain as a ten-out-of-ten and was given Dilaudid and Phenergen intravenously.

The physician then placed Ms. Bates's wrist in a splint, wrapped it with a bandage, and noted

that she had good circulation and movement. The medical records do not reflect any documented

prescriptions for medication. However, Ms. Bates testifies that the orthopedic doctor wrote her a

prescription for Lortab: "I saw him write the prescription and give it to the guard for pain." (Doc.

83-6 at 124).

After being discharged from the hospital, Ms. Bates was transported back to the jail

during the early morning hours of October 6, 2016. At 2:05 a.m., when Ms. Bates returned to the

jail, medical staff noted that she had a steady gait and had no complaints of pain. Ms. Bates's

pain was controlled until the narcotics she was given at the hospital "wore off." (Doc. 83-6 at

46).

By 5:00 a.m. on October 6, 2012, Ms. Bates's pain had returned, and she testifies that her

excruciating pain was not relieved by the medication provided by the jail. Ms. Bates made

numerous complaints of severe pain to the correction officers via the intercom system and

attempted to complain to her nurses about her continued pain.

Mary Moore, the nurse practitioner at the jail, signed a verbal order from Dr. David

6

Hicks, the physician assigned to the jail, for Bates to receive 800mg of Motrin twice a day for ten days. Dr. Hicks agrees that Ms. Bates suffered a severe fracture and testified that he has treated fractures with both narcotic and non-narcotic pain medication in the past.

The jail's medication record reflects a nurse's signature that Ms. Bates was given 800 mg of Motrin twice a day from October 6, 2012 through October 10, 2012, and once on October 12, 2012. The record does not show that Ms. Bates received any medication on October 11, 2012. Ms. Bates testifies that she only received Tylenol or ibuprofen two times while in the jail.

Jail officials then transferred Ms. Bates to a medical dorm, where she was isolated from the general population. On October 9, 2012, Nurse Practitioner Moore examined Ms. Bates's wrist and noted that she had normal blood flow in her fingers, a normal heart rate, and that Ms. Bates would also follow up with an orthopedist. Nurse Practitioner Moore also noted that Ms. Bates did not have any written complaints in her file. However, Ms. Bates testified that she told Nurse Practitioner Moore that she was experiencing severe pain. (Doc. 94-1 at 2).

On October 10, 2012, Ms. Bates went to the orthopedic clinic at Cooper Green Hospital to be examined. The notes from the clinic reference acetaminophen but do not include a prescription for any narcotic pain medication. The records also note that Ms. Bates was complaining of "left wrist pain," and some numbness. (Doc. 81-3 at 16). Additionally, the record states that Ms. Bates had "pain with any attempted movement of the fingers or wrist." *Id.*  Ms. Bates rated her pain as a seven-out-of-ten. The clinic's notes indicated that Ms. Bates would have surgery on October 19, 2012.

After Ms. Bates returned from the clinic, the jail's medical staff noted that she was ambulatory with a steady gait, she had easy breathing, and that she was in "NAD," meaning she

was in no apparent distress. Ms. Bates's medical records do not contain complaints of pain from October 5, 2012 through October 12, 2012. Ms. Bates's brief failed to respond to this stated fact. Accordingly, the court has reviewed Ms. Bates's medical records, found no recorded complaints of pain, and has accepted this fact as true.

On October 12, 2012, Ms. Bates was released from the Jefferson County Jail and transferred to the Cullman County Jail. Cullman County Jail records indicate that Ms. Bates did not have any complaints of pain on October 13, 2012. Ms. Bates then had surgery on her wrist on October 19, 2012, at the Cullman Regional Medical Center, the same day her wrist surgery was previously scheduled to take place at Cooper Green Hospital.

During Ms. Bates's incarceration, she had no communications with Defendant Sheriff Mike Hale regarding her medical condition. Sheriff Hale was not aware of Ms. Bates's incarceration or her medical condition. Sheriff Hale did "not have any direct role in Bates's medical care, and [he] did not instruct anyone to do anything, or refrain from doing anything, regarding Bates's medical care." (Doc. 83-1).

Sheriff Hale contracted with Defendant ACH to provide medical services at the jail, to coordinate inmate hospitalization, and to employ all medical staff working at the jail. The medical staff has the sole responsibility for prescribing and dispensing medication. All medication was dispensed pursuant to a physician or nurse practitioner's order. No Deputy Sheriff made decisions regarding an inmate's medical care, treatments, or medication. Instead, Deputy Sheriffs were responsible for notifying medical staff when they became aware of an inmate's emergency medical needs.

ACH keeps no narcotics onsite at the jail medical facilities. Instead, ACH specially orders

any pain medicines beyond over-the-counter medications to be brought to jail. Dr. Hicks only sees inmate two hours per week. However, he is available by telephone. As a nurse practitioner, Moore cannot prescribe narcotics, but she may refer inmates to Dr. Hicks. ACH and Dr. Hicks have prescribed narcotic medications to inmates in the Jefferson County Jail in the past.

Defendant Norman Johnson is the CEO of ACH. Dr. Johnson was not at the jail, and Ms. Bates's medical charts reflect that he had no direct role in Bates's medical care. Defendant Karen Fowler is a registered nurse serving as ACH's Administrator at the jail. Although Nurse Fowler manages inmate care at the jail, like Dr. Johnson, Ms. Bates's medical chart reflects that Nurse Fowler had no direct role in Ms. Bates's medical care.

### C.    Discussion

Although Ms. Bates sued numerous Defendants, her only remaining claims are her claims in Count I – 42 U.S.C. § 1983 against Defendants Sheriff Hale, ACH, Inc.,. Dr. Johnson, and Nurse Fowler; and Count II – Negligence/Wantonness (Medical Malpractice) against Defendants ACH, Dr. Johnson, and Nurse Fowler. Ms. Bates sued Sheriff Hale, Nurse Fowler, and Dr. Johnson only in their individual capacities in Counts I and II.

As previously mentioned, Ms. Bates does not oppose summary judgment on the claims in the second count of her complaint. The court now turns to Ms. Bates's § 1983 claim against Defendants Sheriff Hale, ACH, Dr. Johnson, and Nurse Fowler for violating her constitutional rights by being deliberately indifferent to her serious medical needs.

### 1.    Deliberate Indifference Claim

The law is well settled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth

Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations and footnotes omitted). Claims of deliberate indifference to the serious medical needs of convicted prisoners are governed by the Eighth Amendment, while the Fourteenth Amendment governs similar claims brought by pre-trial detainees, but the same standard governs. *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007) (analyzing a pre-trial detainee's claim under the decisional law of both the Fourteenth and Eighth Amendments). As the Eleventh Circuit has held, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). As such, the court will analyze Bates's claims under the decisional law of both amendments.

To establish a claim, "a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The plaintiff must prove two elements. First, the plaintiff must show that she has an objectively serious medical need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). A medical need is serious when diagnosed by a physician as requiring treatment or is self-evidently serious to a lay person. *Farrow*, 320 F.3d at 1243 Second, the plaintiff must demonstrate that the prison official acted with deliberate indifference to that serious medical need. *Brown*, 387 F.3d at 1351.

To establish deliberate indifference, a plaintiff "must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). A plaintiff must show that the official acted in "obduracy and wantonness

[and] not inadvertence or error in good faith" to show a violation of a prisoner's constitutional rights. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Denying a prisoner access to medical care constitutes deliberate indifference. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). Further, a policy resulting in inadequate staffing or treatment can constitute deliberate indifference. *Anderson v. City of Atlanta*, 778 F.2d 678, 686 n.12 (11th Cir. 1985).

The undisputed facts establish that Ms. Bates's sustained a severe fracture to her wrist, and the parties do not question that Ms. Bates's broken wrist establishes a serious medical need. Therefore, the court finds that Ms. Bates's broken wrist was a serious medical need. See *Farrow*, 320 F.3d at 1243.

The parties do dispute whether jail medical staff were deliberately indifferent to Ms. Bates's medical needs. Ms. Bates argues that the Defendants were deliberately indifferent to her serious medical need by failing to provide her narcotic pain medication, delaying surgery on her wrist, and by failing to provide her more than two doses of non-narcotic pain medication while she was in the Jefferson County jail.

### a.     Treatment Without Narcotic Pain Medication

 Ms. Bates contends that summary judgment on her § 1983 claim is improper because a genuine issue of material fact exists as to whether Defendants were deliberately indifferent to her medical needs by failing to provide her with a narcotic pain medicine. In support of this argument, Ms. Bates cites to her testimony that a Cooper Green Hospital orthopedic physician wrote her a prescription for a narcotic pain medication, but claims she was only given two doses of non-narcotic medication by jail medical staff despite her severe pain.

11

However, the Cooper Green medical records contradict Bates's testimony. "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whiteside v. Burnside*, 403 Fed. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).Ms. Bates attempts to distinguish *Whiteside* from this case by pointing out that the medical records in *Whiteside* came from a third-party hospital and argues that ACH's own records cannot be used as a basis for disregarding her testimony. Even assuming that the *Whiteside* principle does not apply when a defendant's own medical records are used to contradict the plaintiff, Ms. Bates still has not distinguished her case because the records contradicting her testimony come from Cooper Green, a third party, and reflect the notes of the physicians who treated her wrist. Because the medical records of Cooper Green contradict Ms. Bates's testimony, she does not create a genuine issue of material fact.

Ms. Bates's contention that she should have been prescribed narcotic pain medication instead of prescription strength Motrin also fails to create a genuine dispute of fact whether she suffered a constitutional violation. Ms. Bates preferred to receive a narcotic pain medication, but she offers *no* medical evidence beyond her own subjective, non-medical opinion that the non-narcotic pain medication prescribed by Dr. Hicks was inadequate.

However, a violation of a prisoner's constitutional rights occurs "when a jury could find that the level of medication provided to the prisoner was so cursory to amount to no care at all." *McElligot v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Here, Dr. Hicks, the treating physician, prescribed Bates 800 mg of Motrin twice per day. Ms. Bates contends that Dr. Hicks "all but conceded that doctors treat injuries [like Bates's injury] with narcotic pain medications."

12

Even when the court views the evidence in the light most favorable to Ms. Bates, the court cannot conclude that Dr. Hicks "all but conceded" that *Ms. Bates's injury* should have been treated with a narcotic pain medication. At best, Dr. Hicks's deposition testimony establishes that some doctors would treat injuries like Ms. Bates's with non-narcotic pain medications like ibuprofen or acetaminophen while others would treat the injuries with narcotic pain medications. *See* (Doc. 83-10 at 86) ("There are various ways that a doctor can choose to give prescription pain medication."); *id.* at 133 ("I have treated people that have fractures with narcotic pain medication and I have treated people with fractures without narcotic pain medications."). Dr. Hicks's clinical judgment to prescribe a prescription strength non-narcotic pain medication cannot not be found as a matter of law to be medical care "so cursory to amount as to no care at all." *McElligot*, 182 F.3d at 1257.

Because the court finds no constitutional violation regarding the failure to prescribe narcotic pain medication to treat Ms. Bates's broken wrist, the court **GRANTS IN PART** Defendants's Motions for Summary Judgment as to Ms. Bates's § 1983 claim to the extent that it is premised on Defendants's failure to administer a narcotic pain medication. Accordingly, the court will not re-open discovery as to any policies regarding the administration of narcotic drugs within the Jefferson County jail.

**b.    Delay of Surgery**

Ms. Bates alleges that the Defendants created a "delay" to her receiving surgery on her wrist. (Doc. 29 at 7). However, Ms. Bates does not appear to dispute Defendants's argument that no delay in surgery occurred. The facts, viewed in the light most favorable to Ms. Bates, establish that a physician examined Ms. Bates at the orthopedic clinic at Cooper Green Hospital on

October 10, 2012, and concluded that Ms. Bates should have surgery on October 19, 2012. Although she was transferred to Cullman before her surgery, Ms. Bates did indeed receive surgery on October 19, 2012.

Because Ms. Bates failed to respond to Defendants's motion for summary judgment regarding her surgery and the court finds that no genuine dispute of fact exists as to her claim regarding a "delay" in surgery, the court **GRANTS IN PART** Defendants's Motions for Summary Judgment on Ms. Bates's § 1983 claim to the extent it is based on an alleged delay in surgery.

### c.    Administration of Medication

Ms. Bates contends that she "did not receive pain medication except for, at most, a couple doses of acetaminophen . . .." (Doc. 29 at 8). The jail medical records contradict Ms. Bates's testimony that she only received Tylenol or ibuprofen two times. (Doc. 83-6 at 34). The "Medication Administration Record" in Ms. Bates's medical records indicate that she received 800 mg of Motrin twice per day as prescribed  from October 6, 2012, through October 10, 2012, and one time on October 12, 2012. (Doc. 83-1 at 24).  Ms. Bates's medical records do not indicate, however, that she received *any* pain medication on October 11, 2012, despite being prescribed prescription-strength Motrin for that day. At this stage, undisputed facts show that Ms. Bates did not receive her prescribed medication on October 11, 2012. Therefore, the medical records support Ms. Bates's claim that she did not receive her medication as prescribed. *Cf. Whiteside*, 403 Fed. App'x at 403.

A delay in treatment of even a few hours can constitute deliberate indifference. *See McElligot v. Foley*, 182 F. 3d 1248, 1256 (11th Cir. 1999) ("[A] prison official may nonetheless

act with deliberate indifference by delaying the treatment of serious medical needs, *even for a period of hours . . .*") (emphasis added). Therefore, a genuine dispute exists regarding the material fact of whether and how often Ms. Bates received her prescribed medication while in custody. This dispute precludes summary judgment.

The court **DENIES IN PART** Defendants's Motions for Summary Judgment on Ms. Bates's § 1983 claim to the extent it is based on a failure of the jail to administer her prescribed medication. If necessary, the court will allow for additional discovery on the limited issue of staff training and jail policies regarding the administration of prescribed medications to inmates by ACH in the Jefferson County jail.

### 2.     Supervisor and Policy-Maker Liability

The court now considers whether the individual Defendants may be liable for the potential constitutional violation. However, the court questions whether the Defendants's argument regarding supervisor and policy-maker liability are premature. The court agreed with the Defendants's assertion that Ms. Bates should not be permitted discovery into jail policies until the court had decided whether she could establish an underlying constitutional violation. *See* (Doc. 76).

The court has now found that Ms. Bates has established a genuine issue of material fact as to such a violation as to the administration of her prescribed medications, entitling her to discovery. Because she has not been privy to such information previously, questions of supervisory and policy-maker liability seem premature for summary judgment. However, the court will address the Defendants's arguments to correct their misconceptions as to the legal standard.

15

None of the remaining Defendants were active participants in Ms. Bates's care. Therefore, any liability to Ms. Bates must be premised on a "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). A plaintiff may demonstrate such a link by showing a failure of the official to respond to a pattern of abuse or by showing that a policy or custom enacted by the official resulted in the constitutional violation. *Id.*

Even a private entity may be held liable for a violation of a inmate's constitutional rights. When a private entity "contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that [entity] should be treated as a government entity and as a person acting under color of state law within the meaning of § 1983." *Edwards v. Alabama Dep't of Corr*., 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (citing *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Howell v. Evans*, 992 F.2d 712, 724 (11th Cir. 1991)). Because Sheriff Hale contracted with ACH to perform medical services for jail inmates, ACH and its employees are treated as state actors for purposes of § 1983.

Ms. Bates alleges that her "serious medical needs were ignored because of the customs or policies of defendants" and that the Defendants provided "inadequate training and supervision" regarding medical care at the Jefferson County jail. (Doc. 9 at ¶¶ 53, 57).

### a.    Nurse Fowler and Dr. Johnson

Fowler and Johnson contend that they cannot be liable to Bates because they lacked subjective knowledge that Bates was in pain and, therefore, could not have been deliberately indifferent to her suffering. Fowler and Johnson read the "deliberate indifference" standard too

16

narrowly. *See Farmer v. Brennan*, 511 U.S. 825, 840–41 (1994). True, the Court in *Farmer* rejected liability for prison officials based *solely on constructive notice* imputed onto them. *Id.* However, the Court made clear that a prison official's knowledge of a risk is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" such as the fact that the risk is obvious. *Id.* at 842.

Considering the facts in the light most favorable to Ms. Bates and that she has not been afforded discovery on ACH's policies and procedures, a jury could draw a reasonable inference that she did not receive her prescribed medication because of inadequate procedures and policies developed by Nurse Fowler and Dr. Johnson, and that the injury to Ms. Bates was a foreseeable result of this failure. Accordingly, Nurse Fowler and Dr. Johnson have failed to meet their burden of showing that undisputed facts reveal no genuine issue of dispute regarding their liability. Thus, Nurse Fowler and Dr. Johnson are not entitled to summary judgment at this time.

**b.    Sheriff Hale**

Sheriff Hale makes two arguments denying his liability to Ms. Bates. First, Sheriff Hale argues that for a supervisor or policy-maker to be liable under § 1983, the person who committed the underlying constitutional violation must be a party to the case. Second, Sheriff Hale argues that he is entitled to qualified immunity because of an absence of an underlying constitutional violation of Ms. Bates's rights.

Sheriff Hale argues that he cannot be liable as a supervisor or policy-maker because the agents who committed the underlying constitutional violation have already been dismissed from the case. Sheriff Hale's argument is unpersuasive. The cases cited by Sheriff Hale stand for the proposition that a court will not entertain claims against dismissed defendants, nothing more.

Under § 1983, the liability of the policy-maker or supervisor is independent of the liability of the employee carrying out the policy; that is, liability is not based on a vicarious liability theory. *See Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1049 n. 4 (11th Cir. 2014) ("[S]upervisors cannot be held liable under § 1983 on a theory of vicarious liability."); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990) ("We recognize. . . [that] supervisory personnel cannot be held liable under section 1983 for the acts of their subordinates under the doctrine of *respondeat superior* . . . this, however, does not preclude an inquiry into whether the supervisors were independently liable under section 1983.") (internal citations omitted). Section 1983 simply does not require that the person alleged to have committed the underlying constitutional violation must be a party to the action for supervisor or policy-maker liability to attach. A supervisor or policy-maker's liability is entirely independent of the agent's. A supervisor's or policy-makers' own action–or inaction–gives rise to their liability.

Sheriff Hale's second argument is also flawed. Sheriff Hale argues that he is entitled to qualified immunity because Ms. Bates cannot show a constitutional violation for which Sheriff Hale can be held responsible.[1] As has been discussed, the court finds that Ms. Bates raises a genuine issue of material fact about whether jail officials failed to properly administer her prescribed medication. Further, a reasonable jury could find that such a failure was a result of improper training or inadequate policies for which Sheriff Hale may be responsible. Because a dispute over genuine issues of material fact concerning these matters currently exists, summary judgment based on qualified immunity is not appropriate at this time, as Ms. Bates has not been

---

[1]Hale does not dispute that if the court finds an underlying violation of deliberate indifference to a serious medical need, that Bates's rights under the law would be clearly established for purposes of qualified immunity.

afforded discovery yet on jail policies.

**III.    Conclusion**

For the reasons discussed, the court **GRANTS IN PART** and **DENIES IN PART** the Defendants's Motions for Summary Judgment, (Docs. 82 and 84); and **DENIES** the Defendants's Motion to Strike. (Doc. 96).

Because the court had previously stayed discovery related staff training and jail policies regarding the administration of prescribed medications to inmates by ACH in the Jefferson County jail, the court will consider reopening discovery as to that issue. The court will set a status conference for this case by separate order.

**DONE** this the 27th Day of September, 2016.

_____

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

19